[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE' MOTION FOR SUMMARY JUDGEMENT AS TO REAL ESTATE MANAGEMENT COMPANY
For all times material herein defendant MJB Real Estate Services Corporation hereafter MJB) was the manager of a building in New Haven known as 776-780 State Street and 2 Eld Street, of which defendant GTT Corporation, as trustee, was the owner. Defendant GTT — a subsidiary of Shawmut Bank, now known as Fleet Bank — became interested in selling the building and toward this end employed Robert Cole, d/b/a Robert Cole Commercial Realty, as its exclusive listing broker.
The subject property is a mixed-use building, consisting of commercial space on the first and second floors, and residential space on the third, fourth, filth and sixth floors. At all times material herein a retail store was located on the first and second floors. One apartment on the third floor was occupied; the fourth floor apartment was vacant; and the apartments on the fifth and sixth floors were occupied.
Robert Cole talked to Robert Frew about the building, and thereafter, Robert Frew and his wife, Susan Frew, signed a Real Estate Sales Agreement. This agreement — signed by the Frews on May 6, 1993 — contemplated that the they would have sufficient time to inspect the building and if they found it acceptable, the parties would sign a further and more detailed "Purchase and Sale Agreement" by which the property actually would be sold.[1]
On or about August 10, 1993 — about three months later — the plaintiffs and GTT Corporation, Trustee, signed the formal "Purchase and Sale Agreement" which provided for the property to be sold on or before September 30, 1993[2]
However, prior to signing this latter Purchase and Sale Agreement, Susan and Robert Frew obtained from Robert Cole a tenant rent roll, and arranged a formal inspection of the building by their architect. The tenant rent roll was provided by MJB to Robert Cole who transmitted it to Robert and Susan Frew. The rent roll showed that only one apartment was vacant and listed the rental income from all CT Page 3079 of the other units, residential and commercial. For a substantial time prior to and at the time of transferring the rent roll MJB knew that the apartments were not in a condition to pass inspection and qualify for the issuance of a certificate of occupancy (CO).
For the inspection of the building, Mr. Robert Frew obtained the services of an architect whom he accompanied on the inspection. During the inspection Mr. Robert Frew found the building to be of ". . . extreme high quality . . . top of the market . . . in New Haven." The architect provided the Frews with a written; report of his findings. Prior to and at the time of the inspection Robert Frew was aware that a CO had not been issued for the property. However, his architect informed him that it was not unusual for properties in New Haven not to have a CO, and that to obtain a CO one need only apply at the municipal building and pay a fee of $20.00. The architect had inspected numerous properties for the Frews which they had bought in New Haven over the years.
The Frews owned several other properties on State Street and relie on their right to conduct a building inspection, their own judgment, as well as their architect in deciding whether to cosummate a real estate transaction. Satisfied that they were making a wise purchase, the Frews consummated the deal by closing on the property on October 29, 1993. Immediately after the closing MJB gave the Frews a box which contained numerous papers, including leases, about the building.
The Frews were not aware of any substantial concerns about the building until April of 1994.
After a hearing in April of 1994 in the Housing Session of the Superior Court one of the Frews' tenants defended an eviction action by disclosing that the building did not have certificate of occupancy.
When he went to the building department to obtain a certificate of occupancy, Robert Frew was informed that the building required substantial repairs, and a zoning variance. As stated earlier in this opinion, these conditions prerequisite to the issuance of occupancy were known to MJB, yet MJB did not communicate these prerequisites to Robert or Susan Frew nor to Robert Cole.
The plaintiffs have made the improvements and have obtained CT Page 3080 the necessary certificates of occupancy for the residential units at 776-780 State Street.
The plaintiffs have brought this lawsuit in multiple counts against Fleet Bank. GTT Trustee, MBJ Real Estate Services Corp., and Robert Cole, d/b/a Robert Cole Commercial Realty in which they claim that the defendant's actions and omissions have caused injuries and damages, including emotional distress, and expenses for title searchers, appraisers, architects, and other costs. The Third and Fourth Counts of the Complaint, as revised, are addressed the MJB.
In the Third Count the plaintiffs allege that MJB Real Estate Services Corp, as an agent of the owner committed acts of fraudulent non-disclosure and misrepresentation by failing to disclose to the buyers the following information:
 a) that the use of the apartments on the third, fourth and sixth floors were illegal;
 b) that MJB and the owners were renting the apartments and collecting rents when certificates of occupancy were not issued for said apartments, in violation of the Connecticut General Statutes; and
 c) that MJB, acting within the scope of its agency as rental agent, provided the plaintiffs with a rent roll, list of tenants, and lease descriptions for each apartment, yet failed to disclose that the rental of the apartments was not legally permitted.
In the Fourth Count the plaintiffs incorporate the allegations of the Third Count, and assert that the conduct of MJB constitutes an unfair trade practice in violation of the Connecticut Unfair Trade Practices Act (CUTPA).
Defendant MJB denies all of the allegations in the Third and Fourth Count. Furthermore, MJB has filed a Motion for Summary Judgment seeking a ruling that it is not legally liable to the plaintiffs in their claim for fraudulent misrepresentation. Defendant MJB cites the following reasons as supporting their claim: 1) the plaintiffs never met or spoke with anyone from MJB until after the closing; 2) the rent roll supplied to real estate agent Robert Cole — and not by MJB to the plaintiffs — was not a representation as to whether-there were or were not certificates of occupancy for the residential units in the building; 3) MJB made no statements, false or otherwise, to CT Page 3081 induce the plaintiffs to purchase the building; and 4) the plaintiffs did not rely on any representations from MJB or any party, for the reasons that they are sophisticated buyers in real estate, conducted their own inspection and prior to the closing knew that a CO had not been issued for the residential units.
Plaintiffs Robert and Susan Frew have filed a Memorandum in Opposition to MJB's Motion for Summary Judgment. Each party to this motion has filed an extensive legal memorandum together with excerpts from sworn deposition testimony. A Motion for Summary, Judgment should be granted only if the documentation accompanying it discloses that there is no genuine issue of material fact.United Oil Co. v. Urban Redevelopment Commission 158 Conn. 364,379 (1969).
The integral inquiry in deciding the motion in this case is whether a question of material fact exists as to whether defendant MJB undertook any action which led the plaintiffs to believe falsely that the conditions of the residential units met the prerequisites necessary for the issuance of certificates of occupancy, and which induced the plaintiffs having signed a real estate contract, which provided an ample opportunity for inspection, and which contained a specific clause acknowledging that they were purchasing the property "as is." It is within the further context of the plaintiffs having knowledge from their architect prior to the closing that a CO had not been issued for the residential units.
The inquiry must be viewed within the legal principle asserted by the plaintiffs; namely, fraudulent misrepresentation. In this regard, the question is whether the transmittal of the rent toll to Robert Cole — who transferred it to the plaintiffs — was a misrepresentation of the condition of the residential units since it did not disclose that the units were unfit for the issuance of a CO. Is this an actionable false statement or silence about allegedly illegally rented units? If it is silence, "[t]o be actionable for fraud, the nondisclosuremust be by a person intending or expecting thereby to cause amistake by another to exist or to continue in order to induce thelatter to enter into or refrain from entering into a transaction.Egan v. Hudson Nut Products, Inc., 142 Conn. 344, 347-348 (1955).
This court finds that given the circumstances of the plaintiffs' opportunities to inspect and investigate the condition of the property, purchased "as is," Holly Hill Holdings v. Lowman, 226 Conn. 748, 756
CT Page 3082 (1993), a genuine issue of material fact does exist as to whether MJB' provision of the rent roll constituted an inducement sufficient to be actionably fraudulent. Furthermore, given the complexity of this case, the court can not state that an expert proffer on the standard of care of a managing agent in this situation would not be of assistance to the trier. Parker v. Shaker Real Estate Services, Inc.,47 Conn. App. 489, 495 (1998).
Accordingly, the Motion for Summary Judgment is denied.
Clarance J. Jones, Judge